Ms. Bentley, we'll hear from you first. Good morning and may it please the court. Elizabeth Bentley for the petitioner Sergio Mencia-Medina. Petitioner sought relief in the form of special rule cancellation of removal for battered children on the basis of abuse that he experienced at the hands of his legal permanent resident mother. The IJ granted that relief in a decision based on extensive factual findings that was tailored closely to the statutory text and purpose. And importantly, the IJ found that petitioner had good moral character and was eligible for and deserving of that relief despite his criminal history, which the IJ determined was connected to the abuse he experienced. In reviewing that decision, the BIA overstepped its authority in failing to adhere to the applicable standards in three critical ways. First, it failed to apply the clear error standard and properly relied on its own factual conclusions over those of the IJ. Second, it failed to apply the correct legal standard that requires the BIA to consider the context and purpose of special rule cancellation for battered children in rendering its discretionary decision. And third, it issued an unreasoned and inconsistent decision. Counsel, before we begin, you acknowledged that the BIA generally states the standard right like for clear error in each of the points you discussed. For a clear error review, yes, the board stated that the clear error standard applies, but this court looks not only to what... Yeah, yeah, yeah, but my question is simply that. Is there a time they misstate, you know, the black letter law? In the board's decision? No. Yeah, in the BIA. No, they don't affirmatively misstate. Go to your argument. Great. Well, just to say these errors deprive the petitioner of a fair review of his case when he faces removal from a country he's known since he was three years old, and they undermine this court's precedent and upend the efficiencies and the integrity of the appellate issue. The board regulations provide that the board may not engage in de novo review of findings of fact by the immigration judge and may only review those findings for clear error. And fundamental to that concept is that the immigration judge is tasked with making factual findings based on credibility determinations and on documentary evidence or inferences from other facts. And the as this court held in Waldron versus Holder, that means the board may not reweigh the underlying evidence and testimony behind the IJ's findings to reach new factual conclusions. But that's precisely what happened in this case. Counselor, why is this not Robles where the court said that it was not impermissible for the board to, you know, it wasn't violating the clear error standard by just considering other documents or information that was in the record? Why isn't that this? Sure. The government would draw a rule from that case that the board can rely on its own factual findings from raw record evidence and draw conclusions from that in rendering a not what the Robles case held, nor should this court read it that way. So the Robles majority decision plainly does not expound on the clear error standard of review. It doesn't cite a single one of this court's clear error cases, for example, Waldron or novel Walla Ramirez payroll. It plainly didn't view this case as a clear error issue. The best way that I can read Arusha as consistent with those cases is that the majority there found that, and it's expressly stated that the IJ, excuse me, the BIA did not reject any of the factual findings of the IJ and in fact relied on them in making its discretionary determination and that its weighed those separately to the extent that it was drawing factual conclusions that were at odds with the IJ or that were not addressed at all by the IJ and were important to its decision that would conflict with this court's decision and Waldron and novel Walla and Ramirez payroll, which the court doesn't appear to have been attempting to do in any way, nor would I think the government would argue that it in any way overruled those cases, nor could it. I read the real bottom line of that case as the BIA may evaluate, I'm paraphrasing, but close. The BIA may evaluate the same record, but it may place greater weight on evidence not discussed in the IJ's decision. Do you agree that's the real bottom line of Robles? Well, I see the bottom line. So again, it doesn't discuss. I was quoting the court, but do you think it's the key to the case? No. So I see its reference to that. Whether that's the key to the case. I mean, what I see the court as holding is that there was no conflict with the immigration judge's findings and that the court simply viewed record evidence that it viewed as consistent, the majority decision, at least viewed as consistent with the IJ's findings and that it didn't err in doing that. But I don't read the board, this court, as concluding that the board reached its own factual inferences or conclusions with respect to raw evidence, which is what Waldron clearly states is inappropriate under clear error review. So it's very different from this case where the board referenced and conclusions in two instances, the first by referencing a victim impact statement that was buried in a probation report in the record. And there the court made two factual findings inferences. First, that petitioner caused great pain with respect to his threats of violence conviction, but that conflicts with the immigration judge's findings that petition's addendum pages 31 to 32, that the victim suffered only minor injuries, harmed no one with a sword, and that addendum page 11 that he sat down, gave up the sword, sat down and started crying. It also conflicts with the board's, or excuse me, the board also drew the conclusion that the victim's family lived in fear of retaliation, which conflicted with the immigration judge's family or the community. And that was evident in a number of findings throughout the decision. For example, at addendum page 23, that he completed anger management classes and parenting classes. He expressed regret for the altercation with the stepfather and acknowledged his share of responsibility. Addendum page 12, he has permission to see his son who is a member of that family. At addendum page 32, that the judge found that the incident reflects more of his challenges with emotional regulation than any desire to cause harm. And at a bare minimum, the board found that this statement was accurate and credible, which is at the heart of what the IJ's role is in this case. The board credited that statement despite the fact that it had identified biases right on the top. It says that the author of that victim impact statement, quote, had ongoing concerns with the defendant's continual contact with her daughter. That's at the appendix, page 466. That certainly could have influenced how she would have characterized or described his character and the effects that he's had on her daughter and their family. Second, the board also disagreed with the immigration judge's findings at addendum 34 to 36 that Petitioner had close family ties in the U.S. and that his son and his mother would suffer extreme hardship if removed. And at a minimum, it diminished those factual findings when it referenced the close family ties but then dropped a footnote stating, however, neither Petitioner's nor the mother of his child testified at his hearing, which just shows plain disagreement as to whether or not they would have experienced extreme hardship at his removal. So the board thus violated this court's precedent. Why does that footnote do what you say? It's just a statement of fact. Well, I mean, it references the fact that they didn't appear, especially that the word, however, there really characterizes, it shows that it's qualifying the sentence coming before it, that he had close family ties. And the board entirely ignored the extreme hardship finding there. So the only way that I think you can read that, and the board certainly wasn't reciting procedural history here, it was weighing in and saying, I actually disagree with this close family tie point, but it didn't find clear error with the immigration judge's point. So if I may turn briefly to our second argument, I'm happy to answer additional questions on that, but I want to make sure to address our second point about the board having acted contrary to law and failing to apply the correct legal standard and exercising discretion. Before you go on to that, I did want to ask you about exhaustion. Mm-hmm. We have this lawsuit versus bar opinion that I think you're aware of from 2020, which cites the first circuit Menghua Wan case and quotes the statement that a claim of impermissible fact-finding is unexhausted unless and until the alien files a timely motion to reconsider. And as I understand it, the fifth circuit and the 10th circuit have adopted that same rule that the first circuit is quoted as having. And so my question is whether your lawsuit has already adopted that rule, in which case your claim really is not exhausted unless you raise it in a motion to reconsider, and if not, whether that rule should be adopted. Sure. I'm happy to address that point. This court has already held, well, I should just say the statutory text provides, this is 1252D1, that petitioners required to exhaust administrative remedies that are available as of right, and this court has already held in the White versus IMS case that motions to reconsider are not remedies available as of right and therefore are not required to exhaust. So the lawsuit case was an instance where the petitioner had raised it in a motion to reconsider, and the court held in that context, well, hey, if you have raised it and the BIA denied that decision, you need to appeal from that decision at least as well as the original petition for review. Otherwise, the entire record's not there before the entire agency's decision is not there. I know lawsuit wasn't on this direct point, but it certainly cited the Menghuan language favorably, and I'm not sure the White case, I mean, it didn't talk about this specific question of how do you exhaust an impermissible fact-finding claim. Well, so the, I mean, a couple of quick points on that. The first is that, I mean, White did, has been incorporated with, dealt with a predecessor statute, which this court has referenced White and interpreted, this is the Echu case, where it has applied that to 1252D. But the key point here, I think, is focusing on that as of right language, which is the text of the statute here. And if you look at our reply brief, so the government would have, would suggest that this court follow a number of out-of-circuit cases, including that First Circuit case, that have held that a motion to reconsider is required here. None of those cases discuss that as of right language at all. But we cite a number of cases in the Ninth Circuit, and there may be another Fifth Circuit case, sorry, I don't have it right in front of me here, but the cases that have addressed that textual component of the jurisdictional provision have required in order to establish jurisdiction here. Otherwise it would render that statutory language superfluous. Well, don't you have a right to file a motion to reconsider? What does as of right mean? As of right, as of right means, well, I mean, if you look at just the, you know, Black's legal dictionary here, states that an appeal as of right is, let me see if I can pull up the language really quickly. An appeal as of right is an appeal over which an appellate court must exercise review because it has no discretion to deny review. So you have the right to file a motion to reconsider, but the agency is within its authority for any reason to deny review as a matter of its discretion, therefore the appeal is not an appeal as of right. Be like a petition for certiorari where you can petition, but the court has no obligation to hear it as opposed to a direct appeal to this court from a district court, for example. So you think the board could deny a motion to reconsider alleging impermissible fact finding as a matter of discretion, even if the motion had merit? Certainly, it would be within its power to do so, and in fact, the board, the statute expressly says. Yeah, I know it could, it could enter an order that says that, but wouldn't it be reversible error? Well, the, I believe that the statute provides that the, that a motion for you, it's either statute or regulation, I can find this for you. With respect to a motion for reopen, says it may be denied even if there is merit to the motion. So I don't think there's any requirement that if it's a meritorious motion for reconsideration or motion to reopen, which would have the same language would apply in both of those instances that the board wouldn't be within its authority. All right, go ahead. You wanted to address your second point, and I used up your last two minutes, so I'll give you one minute if you want to focus on that. Oh, thank you. I appreciate that. Well, I can be brief here, but just wanted to point out that the board here acted contrary to law because it failed to apply the correct legal standard in rendering its discretionary decision. The binding board precedent here under matter of AM instructs that in rendering a discretionary decision, the factors that the board may consider to be adverse or favorable to an application have to take into account the particular form of discretionary relief. And in the context of special rule cancellation, that means that you of the statute. And that is in consideration of whether a child has been battered by a legal permanent resident or a U.S. citizen parent, whether any subsequent criminal history is connected to the abuse the child experienced, and looking to whether or not the grant of relief would enable or incentivize a battered child to leave an abusive relationship over someone who may exercise the threat of deportation or immigration benefits over them. And the board here plainly failed to consider this form of discretionary relief in its decision. It didn't consider the statutory purpose in any way, nor did it account for the statutory framework where petitioner's moral character determination had already been determined by the immigration judge at the waiver of the criminal conviction because of the fact that it was connected to the abuse he experienced as a child. And because the board failed to adhere to those principles, and it otherwise issued an inconsistent, unreasoned decision, it acted contrary to law. And for that reason, and as well as its violation of the clear error standard of review, we would ask that the court grant the petition for review and remand the case back to the immigration, or excuse me, to the board for further proceedings. Thank you. Very well. Thank you for your argument. Mr. Newell, we'll hear from you. Good morning. May it please the court. My name is Craig Newell, and I'm here on behalf of the acting attorney general. This court lacks jurisdiction to review the board's discretionary determination that Mr. Mencia did not merit the relief of special root cancellation and exercise discretion, except if he raises colorable constitutional or legal claims. Now, his claims of impermissible fact-finding, an incorrect legal standard, and unreasoned decision, this court should find as either unexhausted, not colorable, or at best, lacking in merit on this record. Since the exhaustion issue came up, I will address that preliminary issue first. It applies to two of the claims, the impermissible fact-finding and the legal standard, regarding the impermissible fact-finding claim, whether you need to exhaust that in a subsequent motion to reconsider. The last sued decision doesn't on point say that, but it highly suggests that. It cites the First Circuit case, which does stand for that exact proposition. And if exhaustion was not required through a subsequent motion to reconsider, then the court could have looked at that impermissible fact-finding claim, notwithstanding whether or not there was a motion to reconsider, and whether or not that was sought, that the petitioner sought judicial review of that. So, last sued strongly suggests that it should be. As to the fact about the white decision about what you need to exhaust as a matter of right. This is the difference between, there is a difference that is lost in Mr. Mencia's argument between remedy exhaustion and issue exhaustion, first of all. And then, second of all, what white is from 1993, that was when there were only regulations that governed motions to reconsider and motions to reopen. In 1996, they were put into the statute. And as the Supreme Court said in a 2008 case, Dada v. Mukasey, an alien has a statutory right to a timely motion to reconsider and a timely motion to reopen. So, that means he has that motion to reconsider, a timely one, as of right, where he could advance such a legal claim as impermissible fact-finding, that the board could correct on a motion to reconsider. And if the board were to deny it, and even if the board were to deny it in a crazy manner and just say, we're not exercising our discretion in denying this reconsideration motion, that alien could seek a judicial review. And that would get overturned because it's an abuse of discretion review, a review that you could show that decision was contrary to law, which is one way of showing an abuse of discretion. So, that's the exhaustion with respect to the impermissible fact-finding claim. As to the legal standard claim, part of the issue here is that the standard for balancing the factors for the exercise of discretion in the cancellation context, and that's for all different types of cancellation, whether it's for permanent residents, non-permanent residents, or the special rule cancellation, is governed by the main factors set out in matter of CVT, where matter of AM is a slight variation to look at when you're talking about in the context of special rule cancellation. Now, here in this case, the immigration judge who granted special rule cancellation in the exercise of discretion used the factors of matter of CVT. Then on DHS's appeal, DHS advocated, and this is on page 112 of the record, that matter of CVT is the governing standard here for the factors. But Mr. Mencia, in his appeal brief, which came after DHS's appeal, did not even argue the exercise of discretion issue, despite it being an ultimate dispositive issue, nor say, hey, CVT is not the framework. It's only matter of AM, or explain how he believes matter of AM substantially changes the outlook here. And even if we were to get into that issue, the factors that the board looked at, and the way the board looked at the decision throughout its evaluation of both the positive factors and the negative factors, it took into account the abuse that he suffered as a child. It took into account with respect to the positive factors, and in evaluating his criminal history, it recognized the mitigating factors, which include the abuse at the immigration judge. And it did that on the face of the decision. And that, in some ways, leads me to the third claim about the unreasoned decision. Mr. Mencia's claim is based on case law about there's essentially a due process violation when an agency renders an appeal. What that requires, really, is for the board to set forth a decision that shows its reasoning, and this court can figure out how to review it. And that was done here. It assumed the statutory eligibility part, and went straight for the ultimate discretionary part. But that is all that was needed. I mean, this court has repeatedly said that not all the positive or negative factors need to be expressly discussed by the board. And then, even beyond that, what his claim is more about is that he sees some cognitive dissonance between saying he can be found to have good moral character for the statutory element, but then be found not to be granted it in the exercise of discretion. And that exercise of discretion evaluation, in some sense, evaluates character on a more general sense. But there is not this dissonance. They're two separate questions that are presented for the statutory elements come first. And then the second part about the exercise of discretion, I mean, this court has recognized that's the equivalent to, or similar to, executive clemency. It's within the attorney general's unfettered discretion, which the board exercises on his or her behalf. So that is why there's no issue there. And the Saleem case of this court answers that in the special rule cancellation explains the difference there between the statutory elements and the exercise of discretion part. So, and if the court does not agree with the exhaustion arguments on the other two claims, we have laid out our responses in the brief. And if there are no further questions, I appreciate all of your time, Your Honor. Thank you very much. Mr. Newell, I do have a question for you on the clear error standard argument. Um, why aren't the BIA's conclusions about, um, some of the issues that were raised, the, the causing of great pain, what, what the victim suffered or did not? Why are those not contradictory of the IJ's findings on those are very similar matters in the decision-making process? Okay, Your Honor, they are not contradictory. We, we were not in a situation like in Waldron where you have this direct conflict. The, the board referenced that victim impact statement, uh, to get at the seriousness of this crime. Seriousness is a judgment call. It's, and all it did was look at evidence that was been in the record from the beginning and weighed it differently as to a judgment call of seriousness and weighing that direct conflict. Uh, Mr. Mencia claims that there is the, the fact that there was no physical injury to the stepfather of his child's mother. The board is not, uh, discounting that or supplanting that this statement is, is about the, it's just a reference to the opinion of, of that, um, woman's, uh, mother about the emotional pain. And it reflects the complicated relationship between Mr. Mencia, the mother of his child and his, I'm sorry, and her parents. And the same goes, uh, with respect to the hardship. Uh, the hardship was the board recognized the close ties. It assumed hardship as a statutory matter. Um, and once again, it, it just weighed it differently and it doesn't, didn't need to go into any great length. There's nothing expressly, uh, in contradiction here, like in the cases of Waldron and others in this court where, where, where you did find an impermissible fact finding. Very well. Uh, if there are no other questions, uh, we thank you for your argument, Mr. Newell. And since you, uh, left some time on the clock, we'll give Ms. Bentley a couple of minutes for Bob. I appreciate that. Thank you. Just to jump right on that last conversation, Judge Kelly, to your point about whether it's a direct conflict we've laid out in our brief, um, where the conflict exists. And I'd just like to point out that, uh, it doesn't have to be, and Waldron was very clear. It doesn't have to be an express conflict with something that IJ actually said, but implicit findings of the immigration judge are just as subject to the findings are. So, but I also want to note that, uh, this court's decision in both in Waldron, I mean, there was one point where it talked about, uh, the, the board had, uh, made a finding about the probability that the petitioner there would be able to find another job. And the court held that to the extent that the probability was important, the board should have remanded that for the immigration judge to make findings in the first instance and not reweigh the underlying evidence. So even if there's not an express conflict, if the board is drawing its own conclusions on, uh, factual conclusions that it finds relevant to its decision, uh, even if it's rendering a discretionary analysis. So Waldron, uh, the, the court directly said that the board has discretion to weigh the IJ's factual findings differently when making an ultimate determination, but can't supplant those findings with its own. And that's precisely what it did here to the extent it was important to learn about the emotional or psychological, uh, harm, any purported harm to any of those family members, then the board should have remanded that to the immigrant or to the immigration judge in the first instance. Um, a couple other just brief points about, uh, in response to the government's argument, uh, with respect to exhaustion on our, uh, legal standard claim, uh, the immigration judge applied the correct standard. We've never, uh, either with the board or with immigration judge have required that, uh, that they use any kind of magic words. So the immigration judge here, however, did cite matter of AM when setting forth a standard for her discretionary review. And then her analysis clearly, uh, incorporated the statutory purpose in that discretionary decision. So there's no reason that petitioner would have been on notice, let alone the fact that it was the government's appeal from that case. And in their notice of which sets forth the issues that, uh, the parties, uh, are to address on, uh, in their briefs, um, they didn't indicate anything about the discretionary analysis, but only had indicated eligibility issues. So to say that petitioner somehow waived a, um, an argument when he was appealing in the first or when he was, um, not appealing in the first instance, uh, is incorrect. So, um, I'm happy to answer any further questions, but I see I'm out of time. So, um, I appreciate, uh, the argument and, uh, request that the court grant the petition. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due court.